Betty Mae DWYER, Appellant,

v.

John Edward DWYER, Respondent.

No. 65833.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Feb. 14, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 20, 1995.

Application to Transfer Denied
April 25, 1995.

James D. Terrell, Hannibal, for appellant.

Jeffrey R. Curl, Hannibal, for respondent.

DOWD, Judge.

Wife appeals the trial court's order quashing a wage assignment previously entered against Husband by finding Wife waived by acquiescence her right to court-ordered maintenance payments. We reverse and remand.

Betty Mae Dwyer (Wife) and John Edward Dwyer (Husband) were divorced after 28 years of marriage. They reached a property settlement before trial but, despite several attempts, could not agree on maintenance. Before negotiations broke down, the last demand by Wife was for $1,000 per month, with Husband counter-offering at $250 per month. Husband's yearly income was $55,600 at the time of the divorce. Wife had not worked outside the home in over 25 years since before their daughter was born.

The trial was held July 3, 1991, to determine the amount of maintenance Husband would pay Wife. At trial, Wife requested $1,250 in monthly maintenance plus health insurance based upon evidence of expenses exceeding $1,500 per month. The trial court issued its decree July 11, 1991, awarding Wife $1,200 per month maintenance and ordering Husband to maintain Wife on his health insurance policy. Husband did not appeal this decree.

Immediately following the trial, Husband claims he went to Wife's house at which time he and Wife reached a compromise maintenance settlement obligating him to pay only $400 per month maintenance and $118 per month for medical insurance. As consideration for giving up $850 monthly in requested maintenance, Husband claims Wife accepted approximately $800 covering half of 1991 property taxes, a dentist bill, and a phone bill. None of these debts were addressed by the trial court in the dissolution decree. Wife denies any compromise agreement but admits taking the money for the taxes and two bills. The phone bill originated before the divorce, and Wife testified all the long-

distance charges on it were for calls made by Husband. The dental bill covered services provided to Wife before the divorce, and Husband and Wife were married more than half of the year for which he paid half the property taxes.

Wife agrees Husband came to her house following the trial; but she claims he was angry and yelling, telling her the lower amount was all she would ever get from him. Interestingly, while Husband claims Wife gave up over $10,000 in requested yearly maintenance for $800, Wife only received $100 of that amount the day the agreement was allegedly made. Husband appeared to pay as the bills were received; for example, he did not pay his half of the property taxes until December 17, 1991, which included taxes on two vehicles that the court set off to Husband.

Husband paid Wife $518 per month for approximately two years. In one month, he did pay $1,200 through the clerk of the court as ordered by the court decree. Husband stated he paid the full $1,200 because he and his new wife were trying to buy a home and the mortgage company told him he owed that money to the court. However, Husband paid less in other months so his payments appear to average out to $518. While Husband was paying Wife this lesser amount, he bought a new car for $13,500, a new truck for $18,000, a new home for $55,500, and new carpeting for $3,600.

In June and July of 1993, Husband paid Wife no maintenance. Thereafter, Wife requested and received a wage assignment. It was determined Husband owed $23,086 according to the $1,200 per month payment terms of the court decree. Husband filed a motion to quash the wage assignment arguing Wife agreed to the lesser amount in exchange for Husband paying the three bills. A trial was held on Husband's motion after which the trial court entered a judgment quashing Wife's wage assignment. The trial court did not issue findings of fact and conclusions of law, but its order stated Wife had modified her maintenance by accepting the $518 monthly payments through the doctrine of waiver and acquiescence. The court held this waiver terminated as of the issuance of

the wage assignment, and the maintenance then increased to the prior ordered $1,200 monthly effective August 1, 1993. Wife appeals.

In Wife's first point on appeal, she contends the trial court's ruling quashing her wage assignment was against the weight of the evidence and was an erroneous application of the law. We agree the trial court misapplied the law.

In a court-tried case, we will sustain the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We exercise caution when setting aside a judgment against the weight of the evidence and must firmly believe the judgment is wrong. *Id.* We give due regard to the trial court's credibility determinations and consider facts and inferences favorable to its ruling. *Burden v. Burden*, 811 S.W.2d 818, 820 (Mo.App.1991); Rule 73.01(c)(2).

The facts reveal Wife accepted the $518 monthly for approximately two years. During this time, she never complained to Husband about the deficiency. However, Wife testified she did not know her legal rights and believed Husband when he told her the $518 was all she would ever get. Wife requested the wage assignment after Husband missed payments for two months. Wife denies she and Husband reached any agreement. We find it unlikely that Wife, after months of refusing to accept less than $1,000 monthly, agreed to accept $400 in monthly maintenance in exchange for one-time payments amounting to approximately $800 for bills which were quite arguably Husband's responsibility anyway. Additionally, the amount of half the property tax, which amounted to a substantial portion of the approximately $800, was not known until much later.

However, the trial court chose to accept Husband's version of the events. The trial court is the best judge of witness credibility and may believe all, part or none of a witness' testimony. *Grommet v. Grommet*, 714 S.W.2d 747, 748 (Mo.App.1986). There-

fore, according to the standard of review, we defer to the trial court's factual determinations and find those facts which are favorable to the judgment support the trial court's assessment that Wife acquiesced. *Id.* at 749.

◼ Nonetheless, the legal burden of showing waiver by acquiescence is still· far from satisfied. Waiver by acquiescence is an equitable doctrine often used by persons attempting to quash executions on judgments for maintenance and/or child support. *Grommet*, 714 S.W.2d at 749–51. Parties utilize the doctrine in an attempt to bypass the general rule that neither side may modify or ignore a court order. *Id.* at 750.

◼ To invoke the doctrine of waiver by acquiescence, Husband must show more than an agreement to accept reduced payments or a delay in demanding full payment. *Id.* at 751. "[W]aiver by acquiescence does not arise in the absence of some fact or circumstance which warrants the invocation of equitable considerations in order to avoid injustice." *Id.* Therefore, we look for some form of injustice suffered by Husband and consider principles of fairness. We find no such injustice.

◼ Injustice can be found by establishing a change in Husband's situation brought on by relying on a misconception of Wife's intent. *Id.* Husband argues he never would have paid Wife's bills had they not agreed on reduced maintenance; he would have sought to have the payments credited towards maintenance obligations.

To better determine whether Husband suffered injustice, we will separately analyze each payment. Husband claims in his brief he gave Wife approximately $1,400 in exchange for the alleged new agreement. This is incorrect, for part of this amount was the reduced maintenance payment for the first month. Husband paid Wife $100 for a phone bill covering a month he still lived with Wife. All the long-distance calls on the bill were his, and it apparently included calls to his girlfriend. Husband suffered no injustice in paying the phone bill. Husband also suffered no injustice in paying half of the property taxes for the year of the divorce. He and Wife were considered married for over

half that year, and his paying half the taxes is both logical and fair. Finally, Husband paid $253.84 for dental services performed on Wife while they were still married. Since Wife had not worked outside the home in over 25 years, we believe it is reasonable to assume while they were married the bills were paid out of Husband's salary. Since they were still married at the time of the dental services, we find no injustice in Husband paying the bill.

Husband argues he is in the same position as was the father in *Sutton v. Schwartz*, 808 S.W.2d 15 (Mo.App.1991). However, in *Sutton,* the court invoked the doctrine of waiver by acquiescence after finding mother accepted lesser payments without protest for seven years and father had paid "substantial" excess payments during three of those years. *Id.* at 19. Apparently, the excess payments offset the amount the mother claimed he owed. *Id.* Therefore, the court found injustice would be worked by making father pay what mother claimed to be owed. *Id.* In the present situation, Husband paid bills which were essentially his to pay. No such injustice exists here.

Husband also argues Wife lulled him into a false sense of security by waiting so long to pursue legal remedies. Were it not for this false security, Husband claims he would not have purchased the car, truck, home and carpeting. Under the circumstances of this case, Husband's intentional overspending cannot amount to an injustice prompting use of the waiver by acquiescence doctrine. Here, any injustice from Husband's "reliance" was self-imposed.

◼ Husband also argues he waived his right to appeal the dissolution decree in reliance on the alleged agreement between he and Wife. He further states he would have filed a motion to modify sooner but for his reliance on the modified agreement. Husband was represented by counsel at trial. We find it unlikely Husband would not have sought his counsel's opinion on this alleged "agreement" between he and Wife and received the proper legal advice as to its validity. Furthermore, like the court in *Grommet,* we believe Husband was merely attempting to evade statutory requirements by not submitting the new "agreement" to the trial court. *Grommet,* 714 S.W.2d at 752. Hus-

band has failed to establish any equitable injustice and thus cannot utilize the waiver by acquiescence doctrine.

 Next, Husband argues if we consider the alleged agreement to be a pre-dissolution agreement, it is binding because it is not unconscionable. An unconscionable pre-dissolution agreement regarding maintenance is not binding on the court. *Grommet,* 714 S.W.2d at 751; § 452.325(2), RSMo 1986. Judicial scrutiny is mandated to avoid coercive tactics or misrepresentation on the part of the party seeking the agreement resulting in injustice to the other party. *Id.* The same scrutiny is to be applied to post-dissolution agreements. *Id.*

Husband claims he gave Wife adequate consideration in exchange for the alleged agreement; therefore, it is not unconscionable. To illustrate this consideration, Husband lists the approximately $800 he paid for bills, his failure to appeal the divorce decree, and his failure to file a motion to modify. For the reasons listed above, the payment of approximately $800 is not adequate consideration. Furthermore, not filing an appeal or a motion to modify the decree cannot be treated as consideration for an agreement which changes court-ordered maintenance payments. *Grommet,* 714 S.W.2d at 750. The alleged agreement is unenforceable at law due to lack of consideration. As explained earlier, it is also unenforceable in equity. We, therefore, reverse the trial court's order which granted Husband's motion to quash Wife's wage assignment. The original trial court's dissolution decree remains in full force and effect.

Wife, in her second point on appeal, argues the trial court erred when it failed to award her attorney fees incurred in defending Husband's motion to quash. Without objection, Wife requested attorney fees during direct examination at the hearing. The trial court's order did not address this request nor did it rule on Husband's request for attorney fees.

"Provided the parties are afforded adequate notice and a full opportunity to be heard," an oral request for attorney fees made during the hearing is not grounds for its denial. *Halliday v. Boland,* 813 S.W.2d 34, 38 (Mo.App.1991), citing to *King v. King,* 694 S.W.2d 278, 279 (Mo.App.1985). Husband's argument Wife should be barred from receiving attorney fees because she did not file a responsive pleading in which she asked for them is, therefore, without merit.

A trial court enjoys a wide latitude of discretion when considering parties' requests for attorney fees. *Burden,* 811 S.W.2d at 822. We will reverse a ruling awarding or denying attorney fees only when the court abused its discretion. *Id.* However, in the present case, we cannot tell from the record before us whether the trial court considered the requests for attorney fees.

We have the authority to determine the value of legal services and fix attorney fees when appropriate and when the record before us is sufficiently developed. *Sutton,* 808 S.W.2d at 23. Wife urges we should enter judgment and award her attorney fees in the amount of $773.50. We find the record insufficient to enable us to do as Wife asks. However, on remand the trial court should consider whether an attorney fee award to Wife is appropriate in light of this opinion.

We reverse and remand.

CRANDALL, P.J., and WHITE, J., concur.